White, Judge.
Concurring with the opinion deliver-
ed by my brother Peck, as to the execution in, this case, I shall confine what I shall say to a few observations on *315 the judgment. The law of costs in this state differs very materially from the law of costs in England laid down in the books. By the common law no costs were recoverable by either the plaintiff or defendant. (2 Inst. 288. Hard. 152. The doctrine of costs there, however, is now become very complicated, and forms one of the most extensive heads of the law in that country. I shall notice in a short manner its general divisions in England, as having some little relation to, and perhaps being to a certain extent explanatory of the present question. Costs in England rest upon a great variety of statutes, and are divided into two classes, such as are final, and such as are interlocutory. The first class, which are in favor of the plaintiff, principally depend upon the statute of Gloucester, 6 Ed. 1, which says, that the demandant may recover against the tenant the cost of his writ purchased, which by a liberal cónstruction has been made to extend to the whole costs of suit, together with the damages in all cases where damages are recovered as in assumpsit, debt, covenant, case, trover, trespass, &c. &c. The first instance of costs given to a defendant was in a writ of right of ward, by the statute of Marlbridge, and afterwards in some very particular cases. The reason why the legislature in England did not place the defendant as early upon the same footing, as to costs, with the plaintiff, was this; that the plaintiff, if he failed in his suit, was amerced pro falso clamare, which was thought a sufficient punishment without subjecting him to the payment of costs, and it was not until the time of Hen. 8 and Jac. 1, that a'general law treating both alike passed. These statutes say,that if the plaintiff be nonsuited, or a verdict pass against him by lawful trial, the defendant shall have judgment to recover his costs, to be assessed and taxed by the discretion of the judge or judges of the court; and shall have such process and execution for the recovery of the .same as the plaintiff might have had if judgment had been given against him. I have cited these English statutes, giving that class of costs called final upon the end of a suit, for the purpose of noticing their structure as being the same. *316 with our act of Assembly giving the like costs, and both directing their recovery or collection by execution.
The 2d, or interlocutory class of costs, are those that are awarded on interlocutory matters arising in the course of the suit, and are very numerous, depending on a great variety of statutes; their recovery or collection resting on the statutes which created them, or upon a rule of court which if not obeyed upon notice, is enforced by attachment.
It will be perceived that our law of costs is very dissimilar to that of England as laid down in their books. That in the first place their assessment or taxation is not discretionary and dependent upon the judge or an officer appointed by him, but prescribed, regulated and fixed by act of Assembly. 2dly. That the interlocutory class of costs, or such as are awarded on interlocutory matters arising in the course of a suit, and by far the most numerous and complex, has no existence here, except in one specified case, and its recovery or collection falls under the general rule, as will be presently noticed.
The similarity that does prevail holds in respect to the first class, in being taxed upon the end or determination of the suit, and in being recoverable or collected by execution. Our act of 1794, ch. 1, sec. 74,says, “Be it enacted,that in all actions whatsoever, the party in whose favor judgment shall be given, or in case of a nonsuit, dismission or discontinuance, the/lefendant shall be entitled to full costs, unless where it is or may be otherwise directed by law.” This is our law of costs; it is general, embraces all cases whatsoever, points to their end or termination in court, and gives full costs to the party prevailing in the suit. Their recovery or collection is the object of the next following section; it says, “Be it enacted, that it shall and may be lawful for the clerks of the superior and county courts on the fees not being paid by the party from whom they are due, to make out execution directed to the sheriff of the county where the party resides, and the said sheriff shall levy the same by virtue of the said execution as in other cases, and a copy of the bill of costs shall *317 be annexed,” &c. The 74th section above quoted,where it says “shall be entitled to full costs, unless where it is or may be otherwise directed,” has reference to the specified case above alluded to, as the only instance in our law of costs of the interlocutory class, or that kind which arises in the course or progress of a suit, and is found in the first member of the last clause of the 26th section of the same act, as follows: “When a plea in abatement shall be pleaded and upon argument the same shall be adjudged insufficient, the plaintiff shall recover against the defendant full costs to the time of overruling such plea, including costs of court. This is the specific exception to the title to full costs which is declared by law and adverted to in the 74th section. What is the case made by the 74th section, and the last clause of the 26th section? It is this; that when the defendant is the prevailing party in the suit, he shall recover full costs, with the exception of what the plaintiff is declared by the 26th section to recover, or in other words, full costs including the costs of the term in which a plea in abatement pleaded by him (the defendant) is adjudged insufficient, and shall be overruled. It is here to be remarked, that although it says the plaintifi shall recover for the bad plea, &c. it does not say that execution shall forthwith or instanter issue, nor does it imply it, and the above part noticed in the 74th section, shews plainly, that an immediate or separateA execution then was not intended by the 26th section-, but by the 74th section it is provided for, and no other case meets it. Besides it is well enough included in the 75th section, where it says, the clerk on the fees not being paid by the party from whom they are due, shall make out execution, &c. &c. and this 75th section is speaking of execution upon determination of suits.
I apprehend it is hardly necessary to state, that the expressions declared by law in the 74th section, means declared by act’of Assembly, and is restrictive of a more general or enlarged sense.
I have said that the class of interlocutory costs does not exist in our law with one exception only, that is the *318 case of an overruled plea in abatement. For I cannot think it can be fairly said that the 5th section of the 4th chapter of the North Carolina act of 1779, forms another; which says, that when it shall he the opinion of the court, the party praying a continuance shall not obtain it without payment of all costs attending the same, the whole of these costs shall be paid before the continuance is granted. My reasons are, first, that the act of North Carolina of 1785, ch. 2, sec. 3, legislating six years afterwards on the very same matter, the granting a continuance, places it on other grounds, to wit, the consent of both parties or cause shewn by affidavit filed, which shall be held sufficient, and omitting altogether the condition of 1779. 2dly. Because this State in 1794 (then a territory) making a court law, proposedly amending the North Carolina act in establishing courts of law and for regulating proceedings therein, when again legislating on the same matter, have adopted the provisions of the act of 1785, and omitted that of 1779, as 1785 had done before it. I say it is certainly not a clear proposition that 1779 is in force.
These being the provisions of our law of costs, short, plain, simple, express, wholly prescribed by act of Assembly, it may be asked where is the sanction to be found for an independent judgment and execution for costs, as if the suit was terminated, upon an interlocutory matter casually arising during its pendency? The answer is, no where. Such a judgment is an assumption of power,, not delegated by the Legislature, and, therefore, in itself a nullity. The act of 1801 ch. 6, sec. 59, speaking of new trials to be had in causes at law or on issues of fact in equity, pretends to the giving no such power. The English practice I admitin some very particular cases to be found in the books, and these more ancient than modern, has imposed it as a condition for the grant, the payment of costs by the party applying. But these costs spoken of there, are a very different matter from the costs in this case. The costs mentioned in the books are the costs of trial only, not the costs of suit, a mere *319 trifle compared with the other. There is another difference in the case between the grant of a new trial in England and here, upon payment of costs. In England the costs of trial and all other costs are paid down by the parties, and he, who receives, is only receiving what he actually expended. But for the party applying for a new trial here to pay down, would be for the other side to reap where he had not sowed; no costs here being paid down, but all awaiting the end of the suit. However, be these matters as they may, it is evident upon our law, no independent judgment and execution can issue before the end of the suit. This is the principle upon which our law of execution rests. Were it otherwise, what an engine of oppression might not the process of law by exe-cutionbe converted into. Take the present case as an example. The grounds upon which new trials are granted are various in their detail, but are resolvable into, or founded upon the misfortunes of the party applying, not upon his default. To remedy this misfortune and to do justice, is the end proposed by the law for the awarding another or a new trial. It would be a remedy for the sake of justice, with a vengeance, if such a proceeding as appears on this record, to wit, a new trial granted, the party to pay all costs incurred in the suit with the exception stated, a mere trifle; judgment rendered for the amountand execution to issue; execution issued accordingly, and that after the cause was out of court by a change of venue and pending in another court; the party’s freehold, the subject matter in contest by the suit, levied on and sold for these costs, and the opposite party the purchaser, who by this very act of purchase under the execution, falsifies his right of action against the defendant, and implies directly his want of title to the land he claimed by his suit, and which he considered by his purchase necessary to obtain, for the purpose of succeeding in his claim against his adversary, and to which he actually had ■ recourse by using the sheriff’s deed in evidence as his title. A new way indeed of gaining a suit, never before heard of, not to be found in the numerous volumes of reports in this *320 and the other States of this union. Not only the analogies of law reject, but even the common sense of mankind must revolt at such a course. Where would be the equal j us ¿jce †0 the suitors, to the wealthy and the needy? How could the embarrassed or the poor man contend for his little farm, even with an undoubted right, against the rich and the designing under the operation of such a proceeding? His poverty or his difficulties would be his ruin, not his want of right, and he would be turned out of doors, deprived of his worldly all, with this accumulated aggravation to his distresses, that the injustice was done to him under the sanction of a court of justice. Can such a proceeding be upheld? The bare statement of it repudiates such a claim.
Let the judgment of the circuit court be reversed and the cause remanded to the circuit court from whence it came, for a new trial to be had therein, &c.
Catron, Judge.
In this cause I have no settled opinion, not being convinced of the correctness of those of my brother judges, upon the grounds assumed; either that the execution was void-, that the judgment was void; or that no execution could issue until after the final termination of the cause in ejectment; but I am unwilling to dissent from my brother judges, because this cause was not advised upon by me, and I have not had time this term to form an opinion in it. My impressions at the former term were contrary to the opinions expressed by judges Whyte and Peck, but doubts have been raised in my mind by the opinions delivered, and I have no prepared and settled judgment either way.
Judgment reversed.